IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as Trustee, Plaintiffs, | ) ) ) ) ) ) ) ) ) ) ) | Case No. 18 C 6707 Honorable Ronald A. Guzmán |
| v. | | |
| NORTHERN INDIANA TRUCKING, LLC, an Indiana limited liability company, Defendant. | | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court grants Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte's (collectively, the "Pension Fund") motion for summary judgment [23]. The Pension Fund is directed to file a proposed draft judgment order within 7 days of the date of entry of this order.

## STATEMENT

**Facts**

Defendant Northern Indiana Trucking, LLC ("NIT") did not file a response to the Pension Fund's motion for summary judgment, so the following facts, which are supported by the record, are deemed admitted. NIT was a participating employer in the Pension Fund because it was a party to collective bargaining agreements pursuant to which it was required to make contributions to the Pension Fund on behalf of its covered employees. On or about December 25, 2016, NIT permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of 29 U.S.C. § 1383. As a result of this complete withdrawal, NIT incurred withdrawal liability to the Pension Fund in the principal amount of $3,153,234.98, as determined under 29 U.S.C. § 1381(b) (the "Withdrawal Liability"). On or about March 16, 2018, NIT received a notice and demand for payment of the Withdrawal Liability issued by the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice Letter"). The Notice Letter demanded full payment of the entire amount of the Withdrawal Liability by April 1, 2014, pursuant to 29 U.S.C. § 1399(c)(5)(B) and Appendix E, § 5(e)(2) of the Pension Fund Plan Document, because NIT had sold its assets and ceased operations. The amount demanded was $3,153,234.98, the balance owed at that time on the Withdrawal Liability.

Because NIT had sold its assets and ceased operations, the Pension Fund believed that there was a substantial likelihood that NIT would be unable to pay its Withdrawal Liability. On

June 11, 2018, NIT requested review of the Withdrawal Liability assessment (the "Review Request"). In the Review Request, NIT asserted that the Pension Fund's mathematical calculations underlying the Withdrawal Liability were inaccurate, although it did not indicate what it claimed to be the correct amount of its liability. On July 17, 2018, the Pension Fund notified NIT that it had denied NIT's Review Request. NIT has not initiated arbitration and has failed to make the required Withdrawal Liability payment to the Pension Fund.

**Analysis**

As summarized by another court in this district:

> ERISA, amended by the MPPAA, requires employers who withdraw from multiemployer pension plans to pay their share of "unfunded vested benefits," otherwise known as "withdrawal liability." 29 U.S.C. § 1381(b)(1). When an employer withdraws, the pension plan must calculate the amount of liability, notify the employer of that liability, and demand payment. 29 U.S.C. § 1399(b)(1). If an employer disputes the liability calculation, it must initiate arbitration within 90 days of receiving notice from the pension plan. Failure to make a timely demand for arbitration results in the assessment becoming due according to the schedule set by the plan. 29 U.S.C § 1401(b)(1). If unable to collect, a pension plan may sue the withdrawing employer for the liability.

*Cent. States, Se. & Sw. Areas Pension Fund v. F.C.J. Props., Inc.*, No. 17-CV-5320, 2019 WL 1425444, at *2 (N.D. Ill. Mar. 29, 2019).

"Anyone who suspects that he might be . . . subjected to withdrawal liability would be well advised to commence arbitration, so that if a court holds that he is . . . subject to such liability he won't have waived the issues that are reserved for arbitration." *Chi. Truck Drivers v. El Paso Co.*, 525 F.3d 591, 600-01 (7th Cir. 2008) (internal quotation marks and citation omitted). Because NIT did not initiate arbitration, any defenses it asserted are waived, and the full amount of withdrawal liability is due and owing.

Under the Pension Fund's Trust Agreement, the Pension Fund computes and charges interest on delinquent withdrawal liability at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged. The Pension Fund's Trust Agreement provides for liquidated damages in the amount of the greater of interest on the delinquent withdrawal liability or up to 20% of the delinquent withdrawal liability. Under the Pension Fund's Trust Agreement, the Pension Fund is entitled to post-judgment interest on the entire withdrawal liability judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth day of the month for which the interest is charged, compounded annually.

For the reasons stated above, the Court grants the Pension Fund's motion for summary

judgment [23]. The Pension Fund is directed to file a proposed draft judgment order within 7 days of the date of entry of this order.

**Date**: May 29, 2019

_____
**Ronald A. Guzmán
United States District Judge**